**ORAL ARGUMENT HAS NOT BEEN SCHEDULED**
_____

**UNITED STATES COURT OF APPEALS**
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

**UNITED STATES OF AMERICA,**
**Appellee**

**v.**

**MICHAEL MATHEWS**
**Appellant**

_____

**No. 13-3047**
_____

**APPELLANT'S BRIEF**

JENIFER WICKS

The Law Offices of Jenifer Wicks
The Jenifer Building
400 7th Street NW Suite 202
Washington, DC 20004
(202) 393-3004

Counsel for Michael Mathews
Appointed by the Court

# TABLE OF CONTENTS

TABLE OF CASES, STATUTES AND OTHER AUTHORITIES ........................ ii

STATEMENT OF SUBJECT MATTER AND APPELLATE JURISDICTION....iv

STATEMENT OF ISSUES ......................................................................1

STATEMENT OF THE CASE...................................................................2

STATEMENT OF THE FACTS ................................................................3

SUMMARY OF ARGUMENT .................................................................6

ARGUMENT .......................................................................................6

I.  THE TRIAL COURT ERRONEOUSLY DENIED THE MOTION TO
    SUPPRESS EVIDENCE SEIZED PURSUANT TO A SEARCH WARRANT
    THAT DID NOT PROVIDE A BASIS FOR A FINDING OF PROBABLE
    CAUSE FOR THE RESIDENCE........................................................6

    A. Standard of Review.....................................................................6

    B. Argument ...................................................................................6

        i.  The evidence seized pursuant to the search warrant should have
            been suppressed because the information provided in the affidavit
            was stale ..........................................................................8

        ii. The evidence seized pursuant to the search warrant should have
            been suppressed because the source of the information was not
            shown to be reliable ...................................................14

        iii. The evidence seized pursuant to the search warrant should have
             been suppressed looking at the totality of the circumstances of an
             unreliable informant providing three years old information..........22

i

iv. *Leon* does not apply to these circumstances ..................................23

II  THE COURT ERRED WHEN IT DENIED THE MOTION TO SUPPRESS
    EVIDENCE SEIZED PURSUANT TO A SEARCH WARRANT WITHOUT
    HOLDING A FRANKS HEARING ...................................................................25

    A. Standard of Review...................................................................................25

    B. Argument ................................................................................................26

CONCLUSION.......................................................................................................30

CERTIFICATE OF COMPLIANCE......................................................................31

CERTIFICATE OF SERVICE ..............................................................................31

# TABLE OF CASES, STATUTES AND OTHER AUTHORITIES

## Cases

*Alabama v. White*, 496 US 325, 330 (1990) ...........................................................22

*Burke v Town of Walpole*, 405 F.3d 66, 81-82 (1st Cir. 2005).................................29

*Franks v. Delaware*, 438 U.S. 154 (1978)................................................25,27,29,30

*Golino v. New Haven*, 950 F.2d 864, 871 (2nd Cir. 1991) .......................................29

*Illinois v. Gates*, 462 U.S. 213, 237 (1983) ........................................................7,11

*Jaben v. United States*, 381 U.S. 214, 224-225 (1965) ............................................7

*Johnson v. United States*, 333 U.S. 10, 14 (1948) ....................................................7

*Massachusetts v. Sheppard*, 468 U.S. 981, 990 (1984) ......................................23,26

*Ornelas v. United States*, 517 U.S. 690, 699 (1996) ..................................................6

*Parsons v. United States*, 15 A.3d 276, 280-81 (D.C. 2010) ...................................24

*\*Rosencranz v United States*, 356 F.2d 310, 316 (1st Cir. 1965).......................10,24

*\*Sgro v. United States*, 287 U.S.206, 210 (1932)...........................................8,14,25

*Spinelli v. United States*, 393 US 410, 416 (1969) .................................................19

*United States v. Bailey*, 622 F.3d 1, 5 (D.C. Cir. 2010) ...........................................6

*United States v. Batchelder*, 824 F.2d 563, 564 (7th Cir. 1987) ...............................9

*United States v. Becton*, 601 F.3d 588, 594 (D.C. Cir 2010) ..................................26

*\*United States v Brooks*, 594 F.3d 488, 493, 494 n.4 (6th Cir 2010).......................10

*United States v Chin*, 981 F.2d 1275, 1278 (D.C. Cir. 1992)...................................19

*United States v Davis,* 617 F.2d 677, 692 (D.C. Cir. 1979) ...................................18

**United States v Dawkins,* 17 F.3d 399, 404 (D.C. Cir. 1994) .........................22,24

*United States v. Dismuke*, 593 F.3d 582, 587–88 (7th Cir. 2010) ..........................15

*United States v. Dozier*, 844 F.2d 701, 707 (9th Cir. 1988) ......................................9

*United States v Fletcher*, 81 U.S.App.D.C. 321, 307 (D.C. Cir. 1947)..............21,27

*United States v Frazier*, 423 F.3d 526, 532 (6th Cir 2005) ................................14,15

*United States v Gifford,* 727 F.3d 92 (1st Cir. 2013)..................................................17

*United States v Glover,* 681 F.3d 411 (D.C. Cir 2012) ...............................................6

*United States v Hall*, 113 F.3d 157, 159 (9th Cir. 1997) .....................................17,18

**United States v. Huggins*, 733 F. Supp. 445, 449 (D.C. 1990).....................9,10,12

**United States v Hython*, 443 F.3d 480 (6th Cir. 2006) ......................10,11,14,21,25

*United States v. Jacobs*, 715 F.2d 1343, 1346 (9th Cir. 1983)...................................9

*United States v Jacobs*, 986 F.2d 1231, 1235 (8th Cir. 1992)..................................29

**United States v. Johnson*, 437 F.3d 69 (D.C. Cir. 2006) ..................................12,13

*United States v Ketzeback*, 358 F.3d 987 (8th Cir. 2003).........................................19

**United States v. Kinnard,* 465 F.2d 566 (D.C. Cir.1972) ...........................20,21,27

*United States v Koerth*, 312 F.3d 862, 868 (7th Cir. 2002).....................................14

*United States v Laws*, 808 F.2d 92, 104 (D.C. Cir. 1982) ..................................15,16

*United States v. Leon*, 468 U.S. 897, 919-20 n.20 (1984).......................23,26,27,29

*United States v Patterson*, 150 F.3d 382, 386 (4th Cir. 1998) .................................20

iv

*United States v Riley, 351 F.3d 1265, 1268 (D.C. Cir. 2003) ....................16,17,24

United States v Roach, 582 F.3d 1192, 1204 (10th Cir. 2009)................................13

United States v Robinson, 724 F.3d 878, 884-5 (7th Cir. 2013)..............................14

United States v Schaefer, 87 F.3d 562, 568 (1st Cir. 1996) ....................................13

United States v Smith, 9 F.3d 1007, 1014 (2nd Cir. 1993)......................................12

United States v Spencer, 530 F.3d 1003, 1007 (D.C. Cir. 2008)......................19,29

United States v. Weaver, 99 F.3d 1372, 1377 (6th Cir. 1996)...................................7

*United States v Webb, 255 F.3d 890, 904-05 (D.C. Cir. 2001) .........10,11,14,24,25

United States v Zayas-Dias, 95 F.3d 105, 114-15 (1st Cir. 1996)....................25,29

Williamson v. United States, 512 US 594, 599 (1994) ...........................................18

Wilson v Russo, 212 F.3d 781, 783 (3rd Cir. 2000) ................................................29

## Statutes and Other Authorities

*U.S. Constitution, Amendment IV.......................................................................6,26

21 U.S.C. § 841 ........................................................................................................2

Federal Rule of Criminal Procedure 41 ...................................................................8

D.C. Code § 23-521 .................................................................................................8

D.C. Code § 23-522 .................................................................................................8

D.C. Code § 48-921 .................................................................................................8

## STATEMENT OF SUBJECT MATTER

## AND APPELLATE JURISDICTION

**A.    Statement of Basis for Subject Matter Jurisdiction in District Court.**

Because Mr. Mathews was charged with offenses against laws of the United States which allegedly occurred in the District of Columbia and his conviction was in the US District Court for the District of Columbia, the United States District Court for the District of Columbia had subject matter jurisdiction pursuant to 18 U.S.C. §§ 3231, 3237, 28 U.S.C. § 2255.

**B.    Statement of Basis for Jurisdiction in the Court of Appeals.**

On April 24, 2013 in open court and on May 3, 2013, by order, the district court issued Judgment, respectively, that disposed of all claims with respect to Mr. Mathews.  Mr. Mathews filed a timely notice of appeal.  Therefore, this Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1291 and Fed.R.App.P. 4(b).

## STATEMENT OF THE ISSUES

I      Did the Court commit error in denying Mr. Mathews' motion to suppress evidence seized from his residence in violation of his Fourth Amendment rights?

II.     Did the Court commit error when it denied Mr. Mathews' motion to suppress all evidence seized from his residence without conducting a *Franks* hearing?

## STATEMENT OF THE CASE

On December 5, 2011, appellant Michael Mathews was charged by indictment with Unlawful Possession with Intent to Distribute 50 grams or more of Methamphetamine, in violation of 21 U.S.C. § 841 (a)(i) and §841(b)(1)(A)(viii). JA:14.  Appellant filed a pretrial motion to suppress evidence and statements and that motion was denied on July 3, 2012.  JA:23,45.  On October 9, 2012, Mr. Mathews was convicted at a bench trial before the Honorable Reggie B. Walton. On April 24, 2013, Mr. Mathews was sentenced to 120 months incarceration followed by a term of 5 years of supervised release.  JA:62.  A timely notice of appeal was filed.  JA:68.  This appeal follows.

## STATEMENT OF FACTS

On December 1, 2011 Metropolitan Police Officer Michael Francis Fanone executed an "Affidavit in Support of an Application for a Search Warrant" for Apartment Number 2, 1500 Massachusetts Avenue, Northwest, in the District of Columbia; and, a judge of the Superior Court of the District of Columbia issued the warrant.  JA:15-22.

According to the affidavit, all of the allegations of criminal conduct relating to the subject premises and the occupant were based on information provided by an unnamed, unidentified "source."  JA:18.  After issuance of the search warrant, on December 1, 2011 at 6:00 o'clock PM, Officer Michael Francis Fanone and other Metropolitan Police officers searched the subject premises and subsequently arrested Mr. Mathews.  JA:24.  The officers reportedly recovered a quantity of "crystal methamphetamine," "drug paraphernalia" and other items of personal property.  *Id.*  Following that activity, the police officers interrogated Mr. Mathews and obtained a recorded statement.  *Id.*  The defense moved to suppress the tangible and statement evidence seized as a result of the warrant.

The factual allegations set forth in the affidavit to support the affiant's belief of probable cause consisted of three essential statements:

-   The source reportedly had bought large amounts of methamphetamine regularly from appellant at the subject premises;

3

- The source reportedly had seen appellant sell quantities of methamphetamine to other persons in this apartment "being sold by an occupant of 901 S Street N.W., Washington, D.C."; and

- "The source has known appellant for more than three years."

JA:19.

The defense contended that Officer Fanone did not disclose to the Superior Court Judge several highly critical facts, JA: 24-25, including as follows:

(1) that "the source" had a pending felony drug trafficking charge;

(2) that the government was prepared to dismiss that charge;

(3) that the police had recovered a significant quantity of methamphetamine in the apartment belonging to the 'source';

(4) that the police had information that the "source" had been selling drugs for more than one year;

(5) that the "source" had not participated in, nor witnessed, any illegal drug transaction in the subject premises during the previous six (plus) months;

(6) that the "source" had not been inside the subject premises during the previous six (plus) months; and,

(7) that the "source" had absolutely no history of providing information to Fanone, or to any law enforcement agent.

The defense also contended the following in the motion to suppress:[1]

> On November 23, 2011 Metropolitan Police Officer Michael Francis Fanone executed an "Affidavit in Support of an Application for a Search Warrant" for the premises at 901 S Street, NW; and, a judge of the Superior Court of the District of Columbia issued the warrant. On the same day, Metropolitan Police officers searched the premises at 901 S Street, NW and recovered approximately 14 grams of methamphetamine with a street value of approximately $2000. The police arrested "NF", who was one of the tenants of the searched premises. Subsequently, "NF" was charged in D.C. Superior Court Criminal with Unlawful Possession with Intent to Distribute A Controlled Substance. "NF" was released on personal recognizance on condition, *inter alia*, that he participates in treatment for substance abuse. On December 6, 2011 the government moved to dismiss the Superior Court matter.   Prior to his arrest on November 23, 2011, "NF" had no contact with police or the criminal justice system, and had not previously attempted to become an informant or to provide tips to the police regarding criminal conduct by any other person. During the period of at least six months prior to December 1, 2011 Mr. "NF" had not been present in the defendant's apartment; and, there had been no transaction involving methamphetamine, or any other personal contact, between the defendant and "NF."  JA:25-26.

After briefing from the parties, Judge Walton denied the motion by order on

July 3, 2012.  JA: 55-62.

---

[1] By the time of the filing of the motion to suppress, the defense had identified the "source" to be "NF", who was residing at 901 S Street, NW at the times set forth in this motion.

## SUMMARY OF ARGUMENT

The Court erred in denying Mr. Mathew's pretrial motion to suppress tangible evidence seized from his residence when the search warrant was based on stale information from an informant whose key information about the alleged criminal was uncorroborated.  Furthermore, the Court erroneously denied the motion without holding a *Franks* hearing.

## ARGUMENT

**I.    THE TRIAL COURT ERRONEOUSLY DENIED THE MOTION TO SUPPRESS EVIDENCE SEIZED PURSUANT TO A SEARCH WARRANT THAT DID NOT PROVIDE A BASIS FOR A FINDING OF PROBABLE CAUSE FOR THE RESIDENCE**

### A.    Standard Of Review

Findings of historical fact made in connection with a motion to suppress are reviewed on appeal for clear error. *Ornelas v. United States*, 517 U.S. 690, 699 (1996). Legal questions are reviewed de novo, while giving "due weight to inferences drawn from [the historical] facts found by resident judges and local law enforcement officers." *Id.  See also United States v Glover,* 681 F.3d 411 (D.C. Cir 2012); *United States v. Bailey*, 622 F.3d 1, 5 (D.C. Cir. 2010).

### B.    Argument

The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation." U.S. Const. Amend. IV.  The search warrant should not have been issued because the affidavit did not provide a

6

basis for a finding of probable cause.  The warrant requirement serves to interpose

between the police and an individual's personal privacy; an orderly procedure

involving a magistrate that is neutral and detached.  *Johnson v. United States*, 333

U.S. 10, 14 (1948).  The warrant process is intended to avoid allowing the

determination of probable cause to rest with the zealous actions of the police who

are "engaged in the competitive enterprise of ferreting out crime." *Id*.

In order for the magistrate to make an informed and knowing judgment, "the

affidavit presented must contain adequate facts about the underlying circumstances

to show that probable cause exists for the issuance of a warrant." *United States v.

Weaver*, 99 F.3d 1372, 1377 (6th Cir. 1996).  Probable cause to issue a search

warrant is found by looking at the "totality of the circumstances" contained within

the four corners of the affidavit.  *Illinois v. Gates*, 462 U.S. 213, 237 (1983).  A

basis of knowledge, veracity and reliability are all factors which are relevant to the

probable cause determination.  However, a deficiency in one factor can be

compensated for by a strong showing in another factor.  *Id*. at 230.  Judicial

officers making probable cause determinations must be careful not to simply ratify

factual allegations without some showing of reliability on the part of the source.

*Jaben v. United States*, 381 U.S. 214, 224-225 (1965) (quoted with approval in

*Gates*, *supra,* 462 U.S. 213, 230, n.6). A failure to ensure that affidavits contain

more than "bare bones" conclusions is an abdication of the duty of the issuing

7

judge. *Gates*, 462 U.S. at 239. The duty of the trial court in reviewing the affidavit is to ensure that the issuing magistrate had a "substantial basis for concluding that probable cause existed." *Id.* at 214.

### i. The evidence seized pursuant to the search warrant should have been suppressed because the information provided in the affidavit was stale

Although there is no specific time requirement for a finding of probable cause to issue a search warrant, "it is manifest that the proof must be of facts so closely related to the time of the issue of the warrant as to justify a finding of probable cause at that time." *Sgro v. United States*, 287 U.S.206, 210 (1932).[2]

In this instance, there not even an assertion that the source observed any of the alleged activity in any proximity to the affidavit, other than apparently at some point in the past 3 years. Consequently, the information in the affidavit cannot support a finding of ongoing criminal activity at the time and for the location for which the warrant was issued.

---

[2] In the Superior Court for the District of Columbia, where this warrant was requested, search warrants may be issued only upon a judicial finding that probable cause exists to believe that "stolen or embezzled" property, "contraband or otherwise illegally possessed" property, property "possessed for the purpose of being used to commit or conceal the commission of a criminal offense[,] or . . . evidence . . . tend[ing] to demonstrate the commission of [] an offense or the identity of a person participating in the commission of an offense," D.C. Code § 23-521(d), "is likely to be found in a designated premise, in a designated vehicle or object, or upon a designated person," D.C. Code § 23-522(b)(2). See also D.C. Code § 48-921.02(a)-(d). *See also* Federal Rule of Criminal Procedure 41.

Information supporting the warrant must be current enough to demonstrate that probable cause exists at the time of the proposed search. If the information in an affidavit is too dated to support probable cause, it is described as "stale."  In this instance, while there were multiple times that the source observed narcotics present in the location, there was no information that this occurred anytime close to December 2011 nor any corroboration of this information, except that the target lived at the residence.  Consequently, the information in the affidavit cannot support a finding of ongoing criminal activity at the time the warrant was issued. "Precisely because of its illegality a drug trafficking scheme has an attenuated existence unlike a legitimate business with an ongoing or continuing concern." *United States v. Huggins*, 733 F. Supp. 445, 449 (D.C. 1990).

In cases where the police are seeking materials of a permanent nature, courts have found freshness and probable cause to support search warrants based on information that may be many days or weeks old.  *See, e.g., United States v. Dozier*, 844 F.2d 701, 707 (9th Cir. 1988) (finding probable cause to search for documentary records despite five-and-one-half-month delay); *United States v. Batchelder*, 824 F.2d 563, 564 (7th Cir. 1987) (finding probable cause to search for illegal gun silencers despite nine-month delay; *United States v. Jacobs*, 715 F.2d 1343, 1346 (9th Cir. 1983) (finding probable cause to search for articles of clothing despite three-and-one-half-month delay).  By contrast, the criminal activity in this

9

case "is the sale of drugs which by definition seeks to dispose of the contraband."
*Huggins*, 733 F.Supp. at 449.  "In the context of drug crimes, information goes
stale very quickly because drugs are usually sold and consumed in a prompt
fashion." *United States v Brooks*, 594 F.3d 488, 493, 494 n.4 (6th Cir 2010)
(holding that an informant's reports of drug transactions, which were at least six
months old, too stale to establish probable cause).

   The leading case for the proposition that undated observations are fatally
stale is *Rosencranz v. United States*. *See Rosencranz v United States*, 356 F.2d 310,
316 (1st Cir. 1965) (reasoning that "[o]fficers with information of questionable
recency could escape embarrassment by simply omitting averments as to time");
*See also United States v Hython*, 443 F.3d 480 (6th Cir. 2006) (suppressing
evidence where affidavit recited that a reliable informant identified the defendant
as her drug supplier and further recited a single, undated controlled buy).

   Courts have been considerably more lenient in assessing the currency of
information supporting probable cause when *police investigation* shows an
extended drug conspiracy. *See United States v Webb*, 255 F.3d 890, 904-05 (D.C.
Cir. 2001) (though troubled by issuance of warrant 109 days after last of three
controlled buys, applying *Leon* exception where controlled buys "verified
[informant's] statement that Webb had been a supplier of narcotics 'for an extended

period of time'"). Here, by contrast, there was no police investigation at all, and police certainly did nothing to verify that there was any extended drug conspiracy.

In *Webb*, this court reasoned that even if drugs were not retained for a long time, a long-time drug dealer's customer contact information would be.[3] Here, the source did not show that he could contact Mathews or even attempt to do so; the police also did not verify anything other than Mathews' residence.

Even if the affidavit did make out an extended drug conspiracy, suppression would still be required because the informant's undated observations provide "absolutely no way to begin measuring the existence of probable cause." *See Hython*, *supra,* 443 F.3d at 486 ("some recent information would be necessary" to avoid suppression, even if affidavit reciting undated controlled buy had also "stated that from time out of mind [that house] had been a notorious drug den"). Certainly the bare assertion here that the informant did buy "regularly" falls short of showing an extended conspiracy, but even if it did, the lack of any averments as to time frame would still require suppression.

Even if the affidavit is construed so that the informant's observations are not undated, but are understood to have occurred at various times within the last three years, suppression would still be necessary. Advertent to *Gates*, it is important to

---

[3] In fact, the court noted: "We find the issuance of this warrant troubling. . . .(A)lthough the time between the application for a warrant and the discovery of evidence supporting the application is 'not controlling,' it is nonetheless important." 255 F.3d at 904.

11

consider all the circumstances together - the informant's low degree of reliability, the lack of corroboration or investigation, and the lack of detail specifying the number of transactions and the quantities and dollar amounts involved, and the staleness of the information. "A statement by an untested informant that three years earlier the defendant was involved in the drug trade carries almost no weight in the analysis of probable cause." *United States v Huggins*, 299 F.3d 1039, 1053 (9th Cir. 2002) (Fletcher, J., concurring).

Below, the government cited *United States v. Johnson*, 437 F.3d 69 (D.C. Cir. 2006) as authority for validating the warrant in the instant matter. However, in that case the appellant was contesting the staleness of the information pertaining to her address. The court noted that "dated information is less likely to show probable cause than fresh evidence" and in the end, the court upheld the warrant on the ground that "greater lengths of time should be tolerated in assessing staleness of information regarding a person's address, as opposed to their possession of contraband…" 437 F.3d at 72.

The delay of years, whether one, two, or three, suggested by this warrant requires suppression. "In investigations of ongoing narcotics operations," information remains timely over "intervals of weeks or months between the last described at and the application for a warrant." *United States v Smith*, 9 F.3d 1007, 1014 (2nd Cir. 1993). This Court found troubling the issuance of a search warrant

12

because of a delay of three-and-a-half months after the last of three controlled buys *during a police investigation*. *See Johnson*, *supra,* 437 F.3d at 72.

Cases where such older information is admitted tend to either present evidence of entrenched, ongoing criminal activity or be expansive permanent grow operations. *See, e.g., United States v Roach*, 582 F.3d 1192, 1204 (10th Cir. 2009)(*Leon* exception applied because of decade-long involvement in gang-related crime and drug trafficking); *United States v Schaefer*, 87 F.3d 562, 568 (1st Cir. 1996) (hydroponic grow room is an expensive, permanent structure). This makes clear that it would be entirely unreasonable to rely on the unproven informant's years-old stories of drug transactions here, without *any* police investigation of the narcotics activity.

Except for the identity and residence of the target individual, the affiant, Officer Fanone, did not claim personal knowledge of any fact or circumstance relevant to a judicial determination of probable cause.  All of the salient facts, regarding drug trafficking activity, were attributed to the "source" without specifying any time or date for any of the occasions when, during the source's alleged three-year acquaintanceship with the target individual, the "source" allegedly participated in, or witnessed, such activity at the residence. There was no information that any of the activity attributed to the target by the source had been observed any time recently – all of the activity could have been three years prior.

An unsubstantiated claim of drug sales and storage, other than sales at a time unknown, cannot support a finding of probable cause to believe there is ongoing drug activity at a particular location.  In all prior cases applying relaxed recency standards for ongoing activity, independent police investigation showed the activity was ongoing. *See, e.g., Webb*, *supra*.  Therefore, there was no basis to conclude there was a likelihood that evidence of a crime could be found at the time the warrant was issued at the address in question. As a result, the warrant was invalid due to staleness. *See Sgro v. United States*, 287 U.S.206 (1932); *United States v. Webb*, 255 F.3d 890 (D.C. Cir. 2001); *United States v. Hython*, 443 F.3d 480 (6th Cir. 2006).

> ## ii. The evidence seized pursuant to the search warrant should have been suppressed because the source of the information was not shown to be reliable

"In the absence of any indicia of the informant's reliability, courts insist that the affidavit contain substantial independent police corroboration." *United States v Frazier*, 423 F.3d 526, 532 (6th Cir 2005).  It is basic that the uncorroborated tip of an unproven, unnamed informant does not make for probable cause. *United States v Koerth*, 312 F.3d 862, 868 (7th Cir. 2002) (extending that rule to a case where the informant was named in the affidavit).   Here, where the only corroborated fact is that the target lived at the address - it sheds little light on the central question whether narcotics was being trafficked at the premises. *See United States v*

14

*Robinson,* 724 F.3d 878, 884-5 (7th Cir. 2013); *United States v. Dismuke*, 593 F.3d 582, 587–88 (7th Cir. 2010) ("[The officer]'s other efforts corroborated only [the defendant]'s identity and the fact that the informant had correctly identified [the defendant]'s residence. Accuracy on these innocent facts is important but does not directly bolster the informant's claim that [the defendant] illegally possessed guns at his home.").

"Although independent corroboration of a confidential informant's story is not a *sine qua non* to a finding of probable cause, in the absence of any indicia of the informant's reliability courts insist that the affidavit contain substantial police corroboration." *United States v Frazier,* 423 F.3d 526 (6th Cir.2005). This Court has held reliance on a confidential informant's statement to be "appropriate so long as the informant's statement is reasonably corroborated by other matters within the officer's knowledge." *United States v Laws*, 808 F.2d 92, 104 (D.C. Cir. 1982) (search warrant properly issued where supported by mutually-reinforcing tips and independent police investigation). In *Laws*, this court held an informant's report that two men were currently selling drugs at the Holiday Inn, by itself, fell short of establishing probable cause because the informant lacked external indicia of reliability. *Id*. at 100-01 (in the absence of a track record showing reliability, the tip merely raised suspicion and "certainly ... warranted further investigation by police). Similarly, the source's tip lacks external indicia of reliability; worse, this

15

tip does not even allege recent drug sales. Certainly the absence of external indicia of reliability is also fatal to the tip.  External indicia of reliability are necessary because "courts should be cautious in accepting the assertion[s]" of "an informant from the criminal milieu." *Id*. at 102. The *Laws* court held it inappropriate to infer the reliability of a confidential informant.  Because the source here is unquestionably an "informant from the criminal milieu," his reliability may not be presumed, but must be established by something external to his tip. Officer Fanone knew that these concerns were complicated here because he thought his informant was withholding information and might have ulterior motives. JA:18 at 6(c).

"A tipster's strong incentives to be truthful, alone, provide[] ample" indicia of reliability to support a *Terry* stop for further investigation, but is insufficient to justify a search or arrest unless the informant is unusually reliable. *United States v Riley*, 351 F.3d 1265, 1268 (D.C. Cir. 2003). The *Riley* court recognized that "in [its] published decisions on probable cause, the police seem always to have had more than a reliable informant and the confirmation of contemporaneous innocent details," but found based on the circumstances in *Riley* found that it was "unnecessary to demand confirmation of illicit or predictive details" because the informant's error-free record of providing over 60 tips over 7 years made him unusually reliable. *Id*. at 1268-69. The untested informant here, presenting undetailed and undated allegations, if anything, is unusually *un*reliable.

16

The so-called corroboration that Officer Fanone did provide was insufficient to make the informant's tip worthy of belief. *Riley, supra*, makes clear that a tip of questionable reliability must be supported by corroboration of the tip's illicit or predictive details, not contemporaneous innocent details.  The First Circuit recently encountered similar facts and suppressed evidence. *United States v Gifford,* 727 F.3d 92 (1st Cir. 2013). In *Gifford*, a DMV record confirming that the known but unnamed and untested informant correctly identified the suspect's residence "does not provide any corroboration for the [marijuana] grow operation." *Id* at 100. Similarly, confirmation here of Mr. Mathews' address provides no corroboration of drug sales.

Other courts agree that without any corroboration, an arrested drug dealer's naming his supplier's name and address falls short of probable cause. *See United States v Hall*, 113 F.3d 157, 159 (9th Cir. 1997). In *Hall*, a warrant was issued after one drug dealer, caught red-handed, named his supplier as "Ron" and gave his address, and police verified the residence as that of "Ronald Hall." *Id*. As an admission against penal interest, the tip "gained some credibility, but not enough to supply probable cause." *Id*. The court reasoned that the informant had already been caught "red-handed, so his admission of what he knew the police already knew" helped little. The court further reasoned that the informant's naming his supplier was a self-serving statement that was part of a broader self-inculpatory narrative.

17

*See id*. at 160 ("The fact that a person is making a broadly self-inculpatory confession does not make more credible the confession's non-self-inculpatory parts") (quoting *Williamson v. United States*, 512 US 594, 599 (1994). Here, the source's admission that he knowingly possessed the drugs with which he was caught does not make probable cause just out of naming Mr. Mathews as a supplier sometime in the past three years.

Common sense suggests that a cooperating informant has a strong incentive to lie about his basis of knowledge to minimize the possibility that his allegations are unintentionally mistaken. Because of his desperate need to produce results for the police to avoid prison, the cooperating informant has a powerful incentive to call old observations recent, to exaggerate the quality and quantity of his observations, and to pass off rumor and stories as first-hand knowledge. In *Davis*, the court held that the informant bolstered his tip by participating in a hand delivery of marked bills to Davis, and arranging the delivery with a phone call overhead by police, which the informant alleged was to Davis. *United States v Davis,* 617 F.2d 677, 692 (D.C. Cir. 1979). This further investigation by the police corroborated the informant's basis of knowledge -- it showed the informant could arrange meetings with Davis and could observe things inside Davis's home. This corroboration reduced the risk that the informant, needing to give up a drug dealer

18

and believing Davis to be a drug dealer, fabricated a story about buying cocaine from Davis in Davis's house.

While the 8th Circuit found probable cause where an unproven CI with pending charges identified his drug dealer, *United States v Ketzeback*, 358 F.3d 987 (8th Cir. 2003), although there was no confirmation of illicit or predictive detail, the informant knew details "that go beyond a 'casual rumor circulating in the underworld.'" *Id*. (quoting *Spinelli v. United States*, 393 US 410, 416 (1969)).  The detail of the tip here - that there were drug sales, and that these occurred in the home - does not go beyond the level of detail one would expect from a "casual rumor circulating in the underworld." *See also United States v Spencer*, 530 F.3d 1003, 1007 (D.C. Cir. 2008) (drug dealers usually work out of their home); *United States v Chin*, 981 F.2d 1275, 1278 (D.C. Cir. 1992) (informant's "identification of Chin could be viewed as weightier than a tip from a more distant informant" where the fact that they were on the same train from Miami indicated that the informant in Chin possessed first-hand knowledge that Chin was a drug trafficker; court makes clear that the allegation of "a more distant informant," like the source here, is by itself not enough to make out probable cause).

People involved in narcotics dealing, unlike other types of crimes, often know plenty of other people with a reputation for drug dealing, even if they are competitors. *See* JA:18 at 6(c)("More cynical persons, of course, might suspect

[the CI] wanted to eliminate competition").  In *Patterson*, a search of a bank robber

was upheld on the uncorroborated confession of his co-perpetrator. *United States v*

*Patterson*, 150 F.3d 382, 386 (4th Cir. 1998) (reasoning that if such testimony is

enough to sustain a conviction, it would be contradictory if it did not suffice for

probable cause). In *Patterson*, the cooperating informant could do little but identify

his true co-perpetrator; he probably didn't know others with a reputation for bank

robbery whom he guessed currently possessed evidence of bank robbery.  Even if

he thought he knew another bank robber, the *Patterson* informant would have

difficulty passing off another as his accomplice; the evidence that would turn up

would point to different bank robberies with different perpetrators. A cooperating

bank robber, caught red-handed, has little reason to lie about the identity of an

accomplice alleged to possess evidence of their crime.  A baggie of drugs is less

unique - for a cooperating drug dealer, his best strategy might be to misrepresent a

hunch or a rumor as a sure thing.

    The worry that a cooperating informant will exaggerate the basis of

knowledge for his tips is even greater in the case of the addict informer. *See United*

*States v. Kinnard,* 465 F.2d 566 (D.C. Cir.1972). Drug addict informers are more

likely to either deliberately exaggerate their level of knowledge of the drug trade or

to actually believe an exaggerated and inaccurate sense of their ability to "deliver

the goods." This may be because the drug addict has a particular tendency to lie

and manipulate. *See id*. at 571 n. 22 (drug addict is "inherently a perjurer"); *see also United States v Fletcher*, 81 U.S.App.D.C. 321, 307 (D.C. Cir. 1947)("a drug addict is inherently a perjurer where his own interests are concerned, it is manifest either that some corroboration of his testimony should be required, or at least that it should be received with suspicion and acted upon with caution."). Or this may be because drug addicts tend to be familiar with a broader spectrum of rumor and gossip about figures in the drug world than is the case for criminals in the underworld generally. Drug addicts gossip with each other about drug world figures while using drugs, and usually have a mental list of back-up suppliers. Here, the risk that this informant was exaggerating his basis of knowledge is heightened where the affiant thought the informant was only being partially truthful. JA:18 at 6(c).  If the informant wanted to protect his closer confederates, an obvious approach would be to give up more distant drug world figures while pretending that these were people that he knew well. The lack of detail in the tip is consistent with this approach, as is the use of conclusory and vague descriptors, i.e., "bought large amounts regularly."  An informant naming someone as his/her drug supplier is not enough. *See Hython, supra.*

21

### iii. The evidence seized pursuant to the search warrant should have been suppressed looking at the totality of the circumstances of an unreliable informant providing three years old information

Because veracity and basis of knowledge are highly relevant considerations that should be considered together among the totality of the circumstances, "if a tip has a relatively low degree of reliability, more information will be required to establish the requisite quantum of suspicion than would be required if the tip were more reliable." *Alabama v. White*, 496 US 325, 330 (1990). The defect of staleness here is not just that stale observations are an unreliable basis of knowledge, but that the staleness also undermines the informant's credibility. This is because the informant can hardly be held accountable for lying to the police -- or exaggerating to back up his hunches about where drugs are -- if the police search and find no drugs in the place where the informant claimed to have seen drugs years ago. Thus, when an unproven informant offers a tip that relies on years-old information and/or undated observations, more information must be offered to corroborate the tip than if it did not have an unreliable basis of knowledge and questionable credibility. *See id*. Here, rather than do police investigation that would bolster the unproven informant's credibility or refresh the currency of his years-old observations, Officer Fanone suggests corroboration because the target lives near midtown and the target fits the "demographic" that the source speaks to him about. JA:18 at 6(b). This is not the stuff probable cause is made from. *See United States*

22

*v Dawkins,* 17 F.3d 399, 404 (D.C. Cir. 1994)(crediting an untested informant's tip "turns in large part on independent police work corroborating the informant's charge").

### iv. *Leon* does not apply to these circumstances

Evidence obtained pursuant to an improperly issued warrant will be excluded if the executing officer's reliance on that warrant was not "objectively reasonable." *United States v. Leon*, 468 U.S. 897, 919-20 n.20 (1984); *Massachusetts v. Sheppard*, 468 U.S. 981, 990 (1984). Objective reasonableness in this context implies a more stringent standard than subjective good faith. Of course, if the constitutional or statutory violation is intentional, knowing, or consciously indifferent to (or in reckless disregard of) compliance with the constitutional or statutory mandate, the "objective reasonableness" standard is clearly not met. In addition, however, the objective standard "requires officers to have a reasonable knowledge of what the law prohibits," and to conform their action to an objective standard. *Leon*, 468 U.S. at 919 n.20. The burden is on the government to establish objective good faith and they have not established it here. *Leon*, 468 U.S. at 924.

One reason why the *Leon* exception should not apply is that it was clearly established, both locally and in this Court, that it was insufficient for probable cause if the information was stale or an informant was uncorroborated when

23

Officer Fanone applied for a search warrant from the Superior Court. In *Parsons*, the District of Columbia Court of Appeals held that the mere fact of an unnamed informant working as a detective's confidential informant does not establish the informant's credibility. *Parsons v. United States*, 15 A.3d 276, 280-81 (D.C. 2010) (suppressing evidence where there was no evidence of confidential informant's track record nor any corroboration). This Circuit has likewise held. *United States v Riley*, 351 F.3d 1265, 1268 (D.C. Cir. 2003)( "in [its] published decisions on probable cause, the police seem always to have had more than a reliable informant and the confirmation of contemporaneous innocent details"); *United States v. Webb*, 255 F.3d 890 (D.C. Cir. 2001)( though troubled by issuance of warrant 109 days after last of three controlled buys, applying *Leon* exception where controlled buys "verified [informant's] statement that Webb had been a supplier of narcotics 'for an extended period of time'"); *United States v Dawkins,* 17 F.3d 399, 404 (D.C. Cir. 1994) (crediting an untested informant's tip "turns in large part on independent police work corroborating the informant's charge");

Another reason why suppression is appropriate is the deterrent purpose of the exclusionary rule. This is not a case where an officer simply omitted otherwise acceptable recency information. To the contrary, this case implicates the concern articulated in *Rosencranz*, *supra,* which was that an officer might seek to avoid embarrassment by omitting averments as to time if the recency of the information

24

were questionable. It is basic that probable cause does not last forever. *See Webb*, *surpa*, 255 F.3d at 904 ("[F]acts supporting a warrant must be so 'closely related to the time of the issue of the warrant as to justify a finding of probable cause at that time'") (quoting *Sgro v. United States*, 287 US 206, 210 (1932)). Any well-trained police officer knows that he must tell the magistrate when informant observations occurred so the magistrate can evaluate the recency of the information. *United States v Zayas-Dias*, 95 F.3d 105, 114-15 (1st Cir. 1996) (applying *Leon* exception where undated observation of stash house refreshed by independent police investigation showing recent drug activity at other locations). Where the affidavit presents only undated information, courts suppress evidence. *See United States v Hython*, 443 F.3d 480 (6th Cir 2006).

## II    THE COURT ERRED WHEN IT DENIED THE MOTION TO SUPPRESS EVIDENCE SEIZED PURSUANT TO A SEARCH WARRANT WITHOUT HOLDING A FRANKS HEARING

### A. Standard of Review

The court denied Mr. Mathews' application for a *Franks* hearing. *See Franks v. Delaware*, 438 U.S. 154 (1978). This Court has not determined whether a district court's decision not to hold a Franks hearing is reviewed under the clearly

erroneous or *de novo* standard of review.  *See United States v. Becton*, 601 F.3d

588, 594 (D.C. Cir 2010).[4]

### B. Argument

The Fourth Amendment provides that "no Warrants shall issue, but upon

probable cause, supported by Oath or affirmation." U.S. Const. Amend. IV. When

police obtain evidence by way of an unlawful search, the exclusionary rule may

require exclusion of that evidence in some circumstances.   As the Supreme Court

has instructed, however, the exclusionary rule has limited force in cases involving

a search with a search warrant. In particular, reviewing courts may not exclude

evidence "when an officer acting with objective good faith has obtained a search

warrant from a judge or magistrate and acted within its scope." *United States v.*

*Leon*, 468 U.S. 897, 920 (1984).  "In the ordinary case, an officer cannot be

expected to question the magistrate's probable-cause determination or his judgment

that the form of the warrant is technically sufficient." *Id*. at 921. The "exclusionary

rule was adopted to deter unlawful searches by police, not to punish the errors of

magistrates and judges.  *Massachusetts v. Sheppard*, 468 U.S. 981, 990 (1984)

(citation omitted).

Under *Leon*, suppression "remains an appropriate remedy if the magistrate

or judge in issuing a warrant was misled by information in an affidavit that the

---

[4]Counsel submits that the District Court in the instant case erred no matter what the
standard of review is.

affiant knew was false or would have known was false except for his reckless disregard of the truth." *Leon*, 468 U.S. at 923 (citing *Franks v. Delaware*, 438 U.S. 154 (1978)).  Here, the affidavit completely misled the reviewing judge by stating that "the source told me about MM's methamphetamine sales (because) the source was trying to get 'a break' from full enforcement of the drug laws. It is not, to use a slang phrase, 'working off a beef.' As noted, however, the source did have a pending felony drug charge in Superior Court, and was undoubtedly trying to "work off" that charge. In addition, that charge had resulted from suspicions (apparently confirmed) that source was a major drug dealer and the police seizure of a large quantity of methamphetamine in the residence of the source.

Particularly troubling is the omission from the affidavit of *any* information concerning the source's drug habit.  *See United States v Kinnard,* 465 F.2d 566, 571 n.22 (D.C. Cir. 1972)(drug addict is "inherently a perjurer"); *see also United States v Fletcher*, 81 U.S.App.D.C. 321, 307 (D.C. Cir.1947)("a drug addict is inherently a perjurer where his own interests are concerned, it is manifest either that some corroboration of his testimony should be required, or at least that it should be received with suspicion and acted upon with caution.").  Here, again, the risk that this informant was exaggerating his basis of knowledge is heightened where Officer Fanone thought the informant was only being partially truthful. JA:18 at 6(c).  The lack of detail in the tip is consistent with this approach, as is the

27

use of conclusory, vague descriptors, i.e., "bought large amounts regularly."
JA:17.

The government's position below was that the defendant's motion does not substantiate his claims. That argument is completely wrong. The defendant's motion included several accurate references to the contents of the affidavit of Officer Michael Farone, which triggered the issuance of the subject search warrant. Similarly, the motion summarized information pertaining to the arrest and prosecution of the "source." JA:24-25.  As the government knows full well, that information was based on D.C. Superior Court records. The defense also stated in writing and in court, obviously, as direct proof of his contentions, the defendant will provide the court with true and correct copies of the affidavit and the court records relevant to the arrest and prosecution of the "source" and that these records were not attached to the defendant's motion, since the identity of a government informant would have been publicly disclosed by that; counsel informed the court that he would provide those records at the scheduled hearing and the court suggested that the defense either wait and use them during the hearing or submit them as a filing.  JA:41,49-51.  A hearing on the motion was scheduled for June 19, 2012 and then rescheduled for July 23, 2012; the court denied the motion before the hearing where such records would have been provided to the Court. JA:4.

The forgoing facts should have been disclosed in the application for the warrant, and their omission is significant. The *Franks* exception to the *Leon* rule applies to "material omissions -- material meaning that their inclusion in th eaffidavit would defeat probable cause." *United States v Spencer*, 530 F.3d 1003, 1007 (D.C. Cir. 2008). Reckless disregard for the truth may be inferred when the information omitted from the warrant is material. *See United States v Vanness*, 85 F.3d 661, 663 (D.C. Cir. 1996).  Other courts agree. "In the case of allegedly material omissions, 'recklessness may be inferred where the omitted infomation was critical to the probable cause determination.'" *Burke v Town of Walpole*, 405 F.3d 66, 81-82 (1st Cir. 2005) (quoting *Golino v. New Haven*, 950 F.2d 864, 871 (2nd Cir. 1991)); *see also Wilson v Russo*, 212 F.3d 781, 783 (3rd Cir. 2000) ("omissions are made with reckless disregard for the truth when an officer recklessly omits facts that any reasonable person would know that a judge would want to know"); *United States v Jacobs*, 986 F.2d 1231, 1235 (8th Cir. 1992) (reckless disregard for the truth inferred where "the omitted material would be clearly critical to the finding of probable cause"). The timeliness information omitted here clearly meets this standard. Any well-trained officer knows that a judge wants to know when informant observations occurred. *See Zayas-Dias, supra.*

29

At the very least, the defendant was entitled to an evidentiary hearing, submission of the records to the court, and a judicial determination of the consequences from the police concealment of significant relevant details from the judge. *See Franks v. Delaware*, 438 U.S. 154 (1978).

## CONCLUSION

Accordingly, the subject warrant was simply not valid because the affidavit did not set forth sufficient facts to establish probable cause and omitted relevant facts that were required to be presented for consideration by the issuing judge. WHEREFORE, based on the issues presented, the order denying the motion to suppress should be reversed, appellant's conviction should be vacated and the case remanded.

Respectfully submitted,

/s/

_____

JENIFER WICKS
DC Bar 465476

The Law Offices of Jenifer Wicks
The Jenifer Building
400 7th Street NW Suite 202
Washington, DC 20004
(202) 393-3004

Counsel for Michael Mathews
Appointed by the Court

## CERTIFICATE OF COMPLIANCE

This brief has been prepared in 14-point Times New Roman font.  This brief contains 6,988 words and complies with the 14,000 word limitation.

/s/

_____

JENIFER WICKS

## CERTIFICATE OF SERVICE

I hereby certify that on the date of filing with the Court, a copy of the foregoing was served by electronic mail on all parties in this case, via the ECF Filing system

/s/

_____

JENIFER WICKS

31